ACME MANUFACTURING COMPANY v. JONAH McPHAIL.

(Filed 13 April, 1921.)

**1. Contracts, Written—Negotiations—Merger—Parol Evidence.**

Negotiations and conversations leading up to the execution of a written contract merge in the writing, and may not be received in evidence when contradictory of its terms.

2. **Same—Vendor and Purchaser.**

A written contract may not be contradicted by a parol contemporaneous agreement, and when a vendor and purchaser of merchandise have expressed in writing that freight allowance should be made to a certain point of transportation, parol evidence contemporaneous with the writing that the vendor contracted to make such allowance to a final destination is incompetent.

3. **Same—Abrogation—Annulment—Subsequent Agreements.**

The principle by which contemporaneous parol evidence is inadmissible to vary the written terms of the contract does not apply to a subsequent agreement between the parties whereby, for a consideration, the written contract has been abrogated or annulled.

4. **Same—Freight Allowances.**

The written contract between the vendor and purchaser that the former would make a freight allowance on the shipment of the merchandise to a certain point may be modified by parol evidence tending to show that since the making of the written contract they had agreed, in consideration of the purchaser's ordering out the goods, which otherwise he was not obligated to do, that the vendor would pay the freight to its destination.

5. **Same—Bills and Notes—Conditions Precedent.**

The vendor and purchaser of fertilizer entered into a written contract for the supply of fertilizer during the season should the latter order it out at a certain price, and freight allowance to a certain point *en route*, and thereafter the purchaser gave his note, including full freight to destination, for the fertilizer he had received: *Held,* parol evidence was competent to show that the notes were accepted by the vendor on condition that they were to be returned unless full freight charges to destination should be credited on them, not as contradicting the written contract, but as explaining the conditions under which the notes were given and accepted, and as tending to show that the written contract had not been consummated.

6. **Principal and Agent—Ratification—Evidence—Questions for Jury.**

While a principal will not be bound by the unauthorized acts of his agent by ratification, assent, or acquiescence therein, without knowledge of the material facts, yet where the fact of agency has been established and the principal benefited, the evidence of ratification will be liberally construed, and very slight circumstances may raise the presumption of ratification to take the case to the jury; and the evidence in this case is held sufficient.

APPEAL by defendants from *Guion, J.,* at the May Term, 1920, of NEW HANOVER.

This is an action to recover $145.47 for the wrongful conversion of certain notes and accounts, and growing out of a contract for the sale of fertilizers entered into between the plaintiff, a manufacturer of fertilizers, and the defendant, on 2 February, 1914.

Mfg. Co. *v.* McPhail.

By the terms of. the contract the defendant did not agree to buy, but the plaintiff agreed to ship to the defendant certain fertilizers in such quantities as might be thereafter agreed upon at prices and on terms named in the contract, "shipments to. be made in not less than car-load lots, and we (fertilizer company) to be at no expense after the delivery of the goods f. o. b. Dunn, N. C."

The shipments to the defendant were to be carried by rail to Dunn, N. C., and then over a logging road to the defendant, and the real dispute in this action is whether the plaintiff or the defendant should pay the freight on the logging road.

The defendant offered to show that at the time of making the contract and before it was actually signed the plaintiff agreed that it would pay the freight on the logging road if other reputable fertilizer companies did so, and that other companies did pay this freight.

This evidence was excluded upon the ground that it contradicted the written contract, it being stipulated therein that the plaintiff was to be at no expense after delivery at Dunn.

The defendant excepted.

The defendant offered evidence tending to show that before he ordered any fertilizers a salesman of the plaintiff agreed that the plaintiff would pay the freight on the logging road and the jury has found that this agreement was made by the salesman.

The plaintiff denied that the salesman had any authority to make this contract, or that it had ratified it.

His Honor charged that there was no evidence of knowledge of the contract on the part of the plaintiff, and that there was no evidence that the plaintiff had ratified the contract, and the defendant excepted.

All the fertilizers bought by the defendant were shipped after the agreement with the agent of the plaintiff and the defendant prepaid the freight on the logging road.

At the close of the season for the sale of fertilizers the account of the defendant with the plaintiff was closed by the execution of four notes aggregating $2,574.48, all of which have been paid except $145.47, the amount in controversy in this action, which substantially includes the freight on the logging road.

The defendant offered to prove that at the time of the execution of these notes he signed the notes and delivered them to the agent of the defendant upon the understanding that the notes would be returned to him, and that the plaintiff might sue on the whole account unless the plaintiff allowed him credit for the freight on the logging road.

This evidence was excluded, and the defendant excepted.

The jury, under the instructions of his Honor, returned the following verdict:

"1. After the execution of the contract for the shipment of fertilizer to defendant, did Woodward, agent for the plaintiff, agree that the company would pay the freight on the fertilizer from Dunn over the log road? Answer: 'Yes.'

"2. Did plaintiff have knowledge of such agreement, and ratify the same? Answer: 'No.'

"3. What amount, if any, is plaintiff entitled to recover of the defendant? Answer: '$145.47.' "

Judgment was entered upon the verdict in favor of the plaintiff, and the defendant excepted and appealed.

*Rountree & Davis for plaintiff.*
*Wright & Stevens for defendant.*

ALLEN, J. Negotiations and conversations preparatory to the execution of a written contract are merged in the writing, and evidence will not be received of a contemporaneous agreement which contradicts its terms.

To do so would be "contrary to the well settled rule, as stated by the *Chief Justice* in *Walker v. Venters,* 148 N. C., 388, where he said: 'It is true that a contract may be partly in writing and partly oral (except when forbidden by the statute of frauds), and that in such cases the oral part of the agreement may be shown. But this is subject to the well settled rule that a contemporaneous agreement shall not contradict that which is written. The written word abides, and is not to be set aside upon the slippery memory of man,' citing *Basnight v. Jobbing Co.,* 148 N. C., 350." *Cherokee County v. Meroney,* 173 N. C., 655.

It follows, therefore, that his Honor correctly excluded the evidence offered by the defendant tending to prove an agreement on the part of the plaintiff to pay the freight on the logging road, made at the time, because in direct contradiction of the contract, which imposed this duty on the defendant.

The principle excluding parol evidence has no application to subsequent agreements, which change or modify the original contract, and consequently it was competent to offer evidence that, after the making of the contract the plaintiff agreed to pay the freight. *McKinney v. Matthews,* 166 N. C., 580.

Nor does the rule require the exclusion of the evidence of the defendant that he delivered the notes to the agent of the plaintiff upon the agreement that the notes were to be returned, if the plaintiff refused to credit them with the amount of the freight on the logging road, such

MFG. CO. *v.* McPHAIL.

evidence being received, not for the purpose of changing or modifying the contract represented by the notes, but to show that the contract was never in existence, because the condition upon which the delivery was made had not been performed, and the evidence was very material, as the freight was included in the notes, and without explanation the defendant was in the position of trying to avoid payment of the freight when he had deliberately included the amount in his notes.

The authorities in support of this principle are numerous. See *Pratt v. Chaffin,* 136 N. C., 350; *Bowser v. Tarry,* 156 N. C., 38; *Garrison v. Machine Co.,* 159 N. C., 285, and cases cited.

We are also of opinion that it was error to instruct the jury, in the present state of the record, that there was no evidence of ratification by the plaintiff of the agreement by its agent to pay the freight on the logging road.

It is true that "In order to bind a principal by ratification, assent, or acquiescence in prior acts of his agent in excess of authority actually given, a knowledge of the material facts must be brought home to him. He must have been in possession of all the facts, and must have acted in the light of such knowledge." 21 R. C. L., 928. And the same rule, requiring knowledge, ordinarily prevails when the contract of the agent has been performed, unless the performance shows knowledge, but "Where an agency has been shown to exist, the facts will be liberally construed in favor of the ratification by the principal of the acts of the agent, and very slight circumstances and small matters will sometimes suffice to raise the presumption of ratification, particularly where the act is for the benefit of the principal," 2 C. J., 492, and ratification may be "implied when the conduct of the principal constitutes an assent to the acts in question." 21 R. C. L., 927.

Let us then see, not whether the contract of the agent has been ratified, but is there evidence of ratification fit to be considered by a jury.

The contract was executed 2 February, 1914. The defendant did not order out any fertilizers until about the middle of March, and not until the agent of the plaintiff had agreed that the plaintiff would pay the freight on the logging road.

The defendant then sent his orders to the plaintiff for fertilizer, which showed that they were to be shipped over the logging road.

The plaintiff accepted the orders and prepaid all of the freight, which was contrary to the provisions of the contract, and in accordance with the agreement made by the agent. All of the fertilizers were shipped under this arrangement, and the freight paid by the plaintiff, and the plaintiff made no demand on the defendant to repay the logging road freight until some time in July or later.

14—181

It does not appear that the plaintiff was compelled to pay the freight in order that shipments might be made, nor is there any evidence of any custom for the manufacturers of fertilizers to prepay freight when the contract requires the purchaser to do so, and leave the question of the payment of freight for final adjustment between the parties, and on the contrary the defendant offered evidence tending to prove that consignees paid freight on shipments when the contract required them to do so, and that the manufacturer was not required to make payment in order that delivery might be made.

The letter of the plaintiff of 6 August, 1914, also furnishes some evidence that the agent was not without authority, because the plaintiff, instead of saying that the agent had no authority to make the agreement with the defendant, says that he was "without sufficient information," and it may also be inferred from it that the agent informed the plaintiff of his contract with the defendant, because it is said therein, "He was later directed to notify you that this freight would not be paid."

The fact that the plaintiff paid the logging road freight is not conclusive, and may be explained, but in the absence of explanation taken in connection with the other circumstances, it furnishes evidence for the consideration of the jury that the plaintiff consented to the modification of the contract in accordance with the agreement with the agent, and this should have been submitted to the jury.

For the errors pointed out, there must be a

New trial.