Rexford D. WALKER, Plaintiff,

v.

Gilder S. HORNE, Frank L. Horne, and William P. Horne, as copartners trading under the name of Horne Company, Defendants.

Civ. A. No. 1109.

United States District Court.
W. D. North Carolina,
Charlotte Division.
March 15, 1957.

Robinson, McFadden & Dreher, Columbia, S. C., for plaintiff.

Bell, Bradley, Gebhardt & DeLaney, Charlotte, N. C., for defendants.

WARLICK, District Judge.

This is a civil action in which plaintiff seeks to recover on a promissory note executed and delivered to him by the defendants for value. It is in words and figures as follows:

"$9,007.83    Charlotte, N. C.,
January 28, 1954

"On or before Feb. 1st, 1955 I promise to pay to the order of Rexford D. Walker Nine Thousand seven and 83/100 Dollars for value received, payable at The Commercial National Bank, of Charlotte, N. C. with interest after maturity at the rate of Four per cent, per annum, until paid.

"All endorsers of this note waive notice of its dishonor.

"Witness—hand and seal.

"P. O. 3115  Horne Company (Seal)
"Telephone 7–1626
     (s) Frank L. Horne (Seal)'
    By: Frank L. Horne (Seal)"

On January 28, 1954 the date of the execution of the note, plaintiff and defendants owned all of the outstanding capital

stock of Rural Gas Service, Inc., a South Carolina corporation, with its principal place of business in Lake City, South Carolina, with the exception of one share owned by Cecil E. Floyd. The corporation had issued and there was outstanding 59,877 shares of stock. Of this plaintiff owned 29,873 shares or approximately 49% thereof. Defendants owned 30,003 shares of stock, or approximately 51%. The stock had a par value of $1 per share.

The corporation was primarily engaged in selling liquefied gas and gas using equipment, including tobacco curers, and its principal office was in the center of South Carolina's fine tobacco growing section.

Both plaintiff and defendants had owned such stock for some years and each was fully acquainted with the affairs of the corporation, and each was a director and an officer of the corporation and actively engaged in its affairs. Plaintiff was President of the Corporation. William P. Horne was Vice President and Assistant Treasurer. Frank L. Horne was Vice President and Assistant Secretary. Gilder S. Horne was Secretary and Treasurer. Cecil E. Floyd, the owner of the one share of stock, was a member of the Board of Directors.

The Horne Company is a partnership, composed of the defendants, with its principal place of business in Charlotte, North Carolina. Plaintiff is a citizen of South Carolina and resided at Lake City, in said state, at the time of the transaction herein. Defendants are residents of North Carolina. Jurisdiction of the action comes about from the diversity statute. Title 28 U.S.C.A. § 1332.

For some time prior to the date of the sale the defendants had been undertaking to purchase the stock of the plaintiff in said corporation and after considerable discussion and at a meeting in Charlotte at the office of the Horne Company, an agreement was reached by the terms of which plaintiff was to sell his stock and execute delivery thereof to the defendants for the sum of $25,000. Such contract of sale was reduced to writing as is shown by the following copy:

"I hereby agree to sell my entire stock holdings in Rural Gas Service, Inc., amounting to 29,873 shares to Rural Gas Service, Inc., or its nominee for a total amount of $25,000.00 of which $6,984.34 has been paid leaving a balance due me of $18,015.66.

"Fifty per cent of the above balance to be paid on or before February 1st, 1954, and the remaining 50% on or before February 1st, 1955 as evidenced by a negotiable note.

"Signed at Charlotte, N. C. this 28th day of January, 1954.
"Parks N. Austin

"(s)  Rexford D. Walker
"Parks N. Austin        Rexford D. Walker
"(Witness)

"Rural Gas Service, Inc.
By:  (s)  G. S. Horne
"Frank L. Horne   By:  (s)  G. S. Horne
"(Witness)

"Sworn to subscribed before me this 28th day of January 1954.
"(s)  Wm. W. Gathings, Jr.
"Notary Public

"My commission expires: September 9th, 1954.
"Seal."

Plaintiff thereupon endorsed the certificates of stock and delivered them to the defendants as a part of the consideration. The defendants transferred real estate to the plaintiff of the value of $6,984.34, and paid additionally in cash the sum of $9,007.83, and executed the note herein sued on, in full satisfaction of purchase price of $25,000.

When the note was not paid at maturity this action was instituted.

The defendants admitted the execution and delivery of the note for value, its nonpayment on demand being made, but in their answer allege in substance that plaintiff, prior to and contemporaneously

with the execution of the contract and the note, expressly represented and warranted to the defendants that the accounts due and payable to the corporation were genuine accounts receivable and represented obligations payable to the corporation by various parties as shown by the books of the corporation. That defendants relied on said representations and warranties and that such was a part of the consideration and was the moving factor that induced the defendants to enter into said contract of purchase of said stock. That many of the accounts were fictitious and represented properties tentatively sold by the corporation with the understanding that if the property sold was not suitable for the purpose intended that the purchaser would not be compelled to pay therefor.

The matter was heard by the court without a jury and at such hearing, after plaintiff had offered the note sued on in evidence and introduced certain admissions in the answer and had rested his case, defendants undertook to offer evidence of these representations and warranties as alleged in the answer. This was objected to, but in order to fully explore and investigate and become acquainted with the evidence in its entirety, it was heard as evidence. At most it indicated in well-nigh each instance that the tobacco curers as manufactured and sold by the corporation were disposed of at retail to various tobacco growers in and around Lake City, South Carolina, where tobacco is the big money crop, and that some of those who purchased these curers claimed that the burners in many instances were not satisfactory and did not measure up to that worth as represented by the salesmen for the corporation; that the agreement of sale was that they were to be returned and no payment was to be made for their use unless and until the purchasers were fully satisfied. In many instances these burners were still in the hands of the purchasers at the time of the taking of the depositions. In quite a few instances the burner had been used as many as two to three years and had not been returned.

All of this evidence appeared in the depositions taken. In no single case did the defendants offer any evidence of a suit filed in a court of law to recover for the price of the article sold which had been determined adversely to the corporation's right to recover. At most the depositions of those individuals who had purchased said burners were to the effect that they were not satisfied and that the burners were to be returned.

The plaintiff objected to the admission of any evidence going to show any warranties with respect to the value of the accounts owned by the corporation, under the parole evidence rule, insisting and contending that the written terms of the contract are specific and definite and that parole evidence is not competent to vary the terms of said contract. The defendants contend that they should be permitted to avoid the parole evidence rule for that where a consideration is merely recited in a writing that parole evidence is admissible to clarify the considerations set out, and insist that the value of the stock was predicated upon the genuineness of the accounts and that the consideration agreed upon was bottomed wholly upon their value.

The evidence further shows that the books and records were kept in Charlotte by the defendants, the funds received were deposited in a Charlotte bank, and that a report was forwarded to Charlotte at the close of business each day, and that the defendants were fully conversant with all of the many factors involved in the business of the corporation.

The plaintiff in his testimony denied making any representations and warranties as to the genuineness of the accounts and insisted that each account in so far as he knew, represented a valid sale and was an obligation that was collectable if an action to recover was instituted and the evidence properly presented.

On the foregoing findings of fact I am of the opinion that the parole evidence offered by the defendants to vary or add to the terms of the contract

of sale is not competent and that such should not be received. This contract was made and entered into in North Carolina and obviously must be determined by the North Carolina law. The rule has been very definitely and clearly stated in many cases by the Supreme Court of North Carolina. One among the more recent decisions setting out the rule as follows:

"A contract not required to be in writing may be partly written and partly oral. However, where the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing. Accordingly, all prior and contemporaneous negotiations in respect to those elements are' deemed merged in the written agreement. *And the rule is that, in the absence of fraud or mistake or allegation thereof, parol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent.* See Whitehurst v. FCX Fruit & Vegetable Service, 224 N.C. 628, 32 S.E.2d 34; Jefferson Standard Life Insurance Co. v. Morehead, 209 N.C. 174, 183 S.E. 606; Miller v. Farmers' Federation, 192 N.C. 144, 134 S.E. 407; Acme Mfg. Co. v. McPhail, 181 N.C. 205, 106 S.E. 672; Evans v. Freeman, 142 N.C. 61, 54 S.E. 847; Moffitt v. Maness, 102 N.C. 457, 9 S.E. 399; Ray v. Blackwell, 94 N.C. 10; Stansbury, North Carolina Evidence, Sec. 253; Wigmore on Evidence, Third Ed., Vol. IX, § 2430; Restatement of the Law, Contracts, §§ 237, 240, and 241; 20 Am.Jur., Evidence, §§ 1099, 1100, 1137, and 1138; 12 Am. Jur., Contracts, § 235; 32 C.J.S., Evidence § 851." Neal v. Marrone, 239 N.C. 73, 78, 79 S.E.2d 239, 242.

I conclude therefore that plaintiff is entitled to recover of the defendants and each of them the sum of $9,007.83, with interest at 4% from February 1, 1955, together with cost of this action.

Counsel will submit decree.