Griffin Mgmt. Corp. v. Carolina Power & Light Co., 2009 NCBC 25.

STATE OF NORTH CAROLINA       IN THE GENERAL COURT OF JUSTICE
                                    SUPERIOR COURT DIVISION
COUNTY OF WAKE                          05 CVS 14428

|  |  |  |
|---|---|---|
| GRIFFIN MANAGEMENT CORP.;<br>BRUCE MAGERS, TRUSTEE IN<br>BANKRUPTCY FOR GRIFFIN<br>SERVICES, INC., AND C. EDWIN<br>ALLMAN, III, TRUSTEE IN<br>BANKRUPTCY FOR JOHN GRIFFIN,<br>INDIVIDUALLY, | )<br>)<br>)<br>)<br>)<br>)<br>) |  |
|           Plaintiffs | )<br>) | **ORDER AND OPINION<br>ON MOTION FOR SUMMARY<br>JUDGMENT BY PLAINTIFF<br>PROGRESS ENERGY, INC.** |
|           v. | )<br>) |  |
| CAROLINA POWER AND LIGHT CO.,<br>INC.; PROGRESS ENERGY, INC.;<br>DUKE ENERGY CORP. and DUKE<br>POWER CO., LLC d/b/a DUKE<br>ENERGY CAROLINAS, LLC;<br>SUPERTEL NETWORKS, INC. and<br>ENGINEERING AND TECHNICAL<br>SERVICES, INC., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |  |
|           Defendants | ) |  |

THIS CAUSE, designated an exceptional and complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to Rules 2.1 and 2.2 of the General Rules of Practice, and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, was before the court on September 18, 2008, for determination of the Motion for Summary Judgment ("Motion") made by Defendant Progress Energy, Inc. ("Progress"), pursuant to Rule 56, North Carolina Rules of Civil Procedure ("Rule(s)") and BCR 15; and

THE COURT, having considered the Motion, the arguments and briefs in support of and in opposition to the Motion, and appropriate matters of record, CONCLUDES that the Motion for Summary Judgment by Plaintiff Progress Energy, Inc. should be GRANTED for the reasons stated herein.

I.

## PROCEDURAL BACKGROUND

[1]     Plaintiffs filed their first Complaint against the Defendants on November 20, 2003. *Griffin Mgmt. Corp. et al. v. Carolina Power & Light Co., et al.*, 03 CVS 7367 (Forsyth County). Plaintiffs dismissed that Complaint on October 28, 2004.

[2]     On October 18, 2005, Plaintiffs re-filed their action against the Defendants. *Griffin Mgmt. Corp. et al. v. Carolina Power & Light Co. et al.*, 05 CVS 14428 (Wake County). Plaintiffs alleged new and additional claims in their re-filed Complaint. Specifically, the Plaintiffs added new causes of action for tortious interference with contract, unjust enrichment/*quantum meruit* and special damages for Griffin Services, Inc. These claims were not alleged in the first Complaint.

[3]     Carolina Power and Light ("CP&L") and Progress collectively filed an Answer and Counterclaim on January 13, 2006, as well as a Motion to Dismiss the claims against Progress pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

---

[1] This Motion to Dismiss was filed prior to this matter being assigned to the Business Court, and never became ripe for adjudication. The court deems this Motion to Dismiss to be abandoned and therefore now rules only on the Motion for Summary Judgment.

[4]     On December 6, 2007, Progress filed this Motion.  The Motion, ripe for adjudication, was heard and decided by the court on September 18, 2008.

II.

MOTIONS FOR SUMMARY JUDGMENT

[5]     Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When the forecast of evidence demonstrates that the plaintiff cannot satisfy an essential element of a claim or overcome an affirmative defense established by the defendant, summary judgment for the defendant should be granted.  *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006).

[6]     Unless otherwise indicated herein, the material facts reflected in paragraphs 7 through 12 of this Order exist, are undisputed[2] and are pertinent to the issues raised by the Motion.

III.

FACTS

[7]     Plaintiff Griffin Management Corporation ("GMC") is a company formerly engaged in the business of providing meter reading and related services to utility companies, including Defendants CP&L and Duke Energy Carolinas,

---

[2] It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56.  However, it is appropriate for a Rule 56 order to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment.  *Hyde Ins. Agency v. Dixie Leasing*, 26 N.C. App. 138 (1975).

LLC ("Duke").  GMC and CP&L entered into a Meter Reading Services Contract on March 8, 1994.[3]

[8]     CP&L Holdings, Inc. (later Progress) was formed in August 1999 as a wholly-owed subsidiary of CP&L.[4]  CP&L Holdings, Inc. changed its name in February 2000 to CP&L Energy, Inc.[5]  In June 2000, CP&L Energy, Inc. acquired all the outstanding shares of CP&L.[6]  At this time, the directors of CP&L became the directors of CP&L Energy, Inc.[7]  CP&L employee incentive plans remained in place after the share exchange, as well as a new management deferred compensation plan.[8]  The exchange provided that these employee plans would be amended so that CP&L Energy Inc. would issue or deliver its common stock in lieu of CP&L common stock.[9]

[9]     On December 12, 2000, CP&L agreed to advance a loan to GMC that Mr. John Griffin guaranteed.[10]  During that same month, CP&L Energy, Inc. changed its name to its present name, Progress Energy, Inc.[11]

[10]    CP&L terminated its Contract with GMC on April 26, 2001.[12]

[11]    In November 2002, CP&L filed a certificate with the Wake County Register of Deeds to engage in business under the assumed name of Progress Energy Carolinas, Inc.[13]

---

[3] Blanchard Dep. Ex. 1. *See also* Defs.' Ans., ¶ 40.
[4] Graves Aff. ¶ 8, Ex. B.
[5] Graves Aff. ¶ 9, Ex. C.
[6] Graves Aff. ¶ 10, Ex. D.
[7] Graves Aff., Ex. D., Art. III(A)(v).
[8] Graves Aff., Ex. D., Recital C.
[9] Graves Aff., Ex. D., Art. III (C)
[10] Dep. Ex. 12. This exhibit includes, in part, the advance agreement, a certificate of compliance, a guarantee agreement and a demand promissory note.
[11] Graves Aff. ¶ 11, Ex. E.
[12] Dep. Ex. 7.

[12] Progress itself is a passive holding company.[14] It does not conduct business as an operating entity.[15] Rather, the sole responsibility of its officers[16] is to manage the company's ownership interests in its subsidiary entities, one of which is CP&L.[17] The company is governed by its own board of directors.[18]

IV.

THE PARTIES' CONTENTIONS

[13] Progress argues that it is entitled to summary judgment pursuant to Rule 56(c) since it is not a proper party to the litigation. Without addressing Plaintiffs' claims against CP&L, Progress argues that it is entitled to summary judgment on all claims because:

    a. Progress did not participate in any of the alleged events giving rise to the litigation and had no dealings with the Plaintiffs and, as such, is not a proper defendant in this action;

    b. Plaintiffs cannot recover from Progress based on the alleged acts of its subsidiary, CP&L, without an additional showing of fraud or agency;

    c. Progress and CP&L were not engaged in a joint venture and, as a matter of law, a parent corporation cannot be held liable for the acts of its subsidiary under a joint venture theory; and

---

[13] Ex. A

[14] Graves Aff. ¶ 13.

[15] *Id.*

[16] Graves 2nd Aff. ¶ 2.

[17] Graves Aff. ¶ 13.

[18] Graves Aff. ¶ 12. The original Agreement and Plan of Share Exchange, dated Aug. 22, 1999, calls for the directors of CP&L to become the directors of CP&L Holdings, Inc. See Graves Aff., Ex. D, Ex. A, Art. III(A)(v). However, an exhibit describing Progress' corporate structure after December 4, 2000 reveals the name of only one individual who served on the board of both Progress and CP&L. Graves Aff., Ex. F.

d. There is no basis for the application of equitable estoppel to bind Progress for the acts of CP&L.

[14] Plaintiffs argue that Progress is a proper party, alleging a joint venture between CP&L and Progress in connection with the events pertaining to this action. Plaintiffs contend summary judgment as to Progress is inappropriate because:

a. There is a genuine issue of material fact regarding the existence of a joint venture between Progress and CP&L because of a common undertaking and shared control of CP&L employment compensation; and

b. Progress is estopped from claiming it is not a proper party to this litigation because it permitted CP&L to hold itself out as Progress Energy in connection with the transactions at issue in this case.

V.

RELEVANT LAW

[15] In North Carolina, a corporation is an entity distinct from its shareholders, even if all of its stock is owned by a single individual or corporation. *Troy Lumber Co. v. Hunt*, 251 N.C. 624, 627 (1960).

[16] That a parent company wholly owns the capital stock of its subsidiary and members of the board of directors of both corporations are the same, nothing else appearing, "is not sufficient to render the parent corporation liable for the contracts of its subsidiary." *Whitehurst v. FCX Fruit and Vegetable*, 224 N.C. 628, 637 (1944); *Huski-Bilt, Inc. v. First-Citizens Bank & Trust Co.*, 271

N.C 662, 670 (1967). Indeed, there must be additional circumstances showing fraud, actual or constructive, or agency, to establish such liability. *Whitehurst*, 224 N.C. at 637.

[17]   The parent-subsidiary relationship exists, in part, to limit the liability of a corporation's shareholders. *Excel Staffing Serv., Inc. v. HP Reidsville*, 172 N.C. App 281, 290 (2005). Indeed, "a shareholder of a corporation is not personally liable for the acts or debts of the corporation except that he may become personally liable by reason of his own acts or conduct." N.C. Gen. Stat. § 55-6-22. The limited liability rule applies whether the shareholders are individuals or another corporation. *Excel* at 290.

[18]   A joint venture is "an alliance between two or more people in pursuit of a common purpose such that [the] negligence of one participant may be imputed to another." *Slaughter v. Slaughter,* 93 N.C App. 717, 720 (1989). There must be a "community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movement of each other with respect thereto." *Id.*; *see also, Rhoney v. Fele*, 134 N.C App. 614, 620 (1999) (holding a joint venture requires "(1) an agreement, express or implied, to carry out a single business venture *with joint sharing of profits*, and (2) an *equal right of control* of the means employed to carry out the venture." (quoting *Edwards v. Bank*, 39 N.C. App. 261, 275 (1979)). Further, a joint venture requires each co-venturer to contribute something that would promote the enterprise. *SE Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 327 (2002), quoting *Pike v. Trust Co.*, 274 N.C. 1, 8-9 (1968).

[19]     Mere ownership of a company does not mean the owner shares in the subsidiary's profits.  *See*, *e.g.*, *Wood v. McDonald's Corp.*, 166 N.C. App. 48, 60-61 (2004).

[20]     In a joint venture, each party must be able to direct the conduct of the other.  *Rifenburg Constr., Inc. v. Brier Creek Assocs. LP*, 160 N.C. App. 626, 632 (2003) (citing *Pike, supra,* at 8-9).  The control required for imputing negligence under a joint enterprise theory is not actual physical control, but the legal right to control the conduct of the other with respect to the prosecution of the common purpose.  *Slaughter*, 93 N.C. App. at 721, citing *James v. Atlantic & E. Carolina R.R. Co.*, 233 N.C. 591, 598 (1951).

[21]     When a corporation voluntarily places an officer or agent in such a position or situation that persons of ordinary prudence, conversant with business usages and the nature of the particular business, are justified in assuming the officer or agent has authority to perform the action question and deal with the officer or agent upon that assumption, the corporation is estopped as against such persons from denying the officer's or agent's authority.  *Moore v. W O O W, Inc.*, 253 N.C. 1, 6 (1960).

[22]     A party asserting the defense of equitable estoppel must demonstrate (a) lack of knowledge and the means of knowledge of the truth as to the facts in question; (b) reliance upon the conduct of the party sought to be estopped; and (c) action based thereon of such a character as to change the party's position prejudicially.  *Hawkins v. M. & J. Finance Corp.*, 238 N.C. 174, 178 (1953).

VI.

ANALYSIS

[23] The facts here reflect that Plaintiffs contracted solely with CP&L, not Progress.[19] Indeed, it is undisputed that persons with whom Plaintiffs dealt were employees of CP&L.[20]

[24] The facts do not support the existence of fraud, actual or constructive, or agency, sufficient to establish such liability on the part of Progress for the actions of CP&L. Indeed, the Plaintiffs have agreed that the circumstances in which piercing the corporate veil would apply do not exist here.[21]

[25] The facts do not indicate that the relationship between CP&L and Progress is a joint venture. There is not a sufficient forecast of evidence of a joint venture agreement or joint profit sharing. Progress' involvement in the compensation of CP&L employees does not dictate a joint sharing of profits. CP&L does not control Progress, its sole shareholder, and Progress' involvement in the compensation of CP&L employees does not subject Progress to CP&L's control.

[26] The court observes that application of joint venture principles to the relationship between a corporation and its shareholder as it exists in this matter would work an end-run around the limited liability provided in N.C. Gen. Stat.

---

[19] *See* FN 3, 10, *supra.*
[20] Citation made to Pls.' Ans. to Defs. CP&L & Progress' First Set of Interrogs. 3-4, 10. Plaintiffs do not contest this statement in their Memorandum in Opposition to Progress' Motion for Summary Judgment.
[21] Pls.' Br. in Opp. at 5 n. 2.

§ 55-6-22 and would effectively eliminate an important and longstanding characteristic of corporate law.

[27]    Plaintiffs have not demonstrated either (a) any lack of knowledge or the means to discern the identity of the company with whom they were conducting business or (b) action based on their reliance on Progress, if there was such reliance, that changed their position prejudicially.  Moreover, Plaintiffs' assertions that CP&L employees communicated as if or that they were Progress employees are untenable.[22]  CP&L's request to call itself "Progress Energy Carolinas, Inc." took place in 2002, well after the events at hand occurred.  The letterhead of an exhibit dated April 26, 2001, describes CP&L as "A Progress Energy Company," a descriptor that indicates relation to, but not identity as, Progress Energy.[23]  Three letters sent by a third party indicate some interchangeable use of the names, but they do not convince the court that the

[22] In their Response in opposition to Progress's Motion for Summary Judgment, Plaintiffs assert that CP&L employees directly involved in the issues in this case communicated as if they were Progress employees, citing "Exhibits under seal 1-7."  Though Progress referred to the same documents in its Reply, the court has not located any contemporaneously filed exhibits.  Upon request by the court, Plaintiffs' counsel declined to search for or clarify the identity of these documents. The court did locate several documents under seal filed at least six months after Plaintiffs filed their Response.  Of these exhibits, Exhibits 7 and 9 indicate the e-mail address of a CP&L employee may suggest the employee's affiliation with Progress.  However, the e-mail at issue was addressed on 12/2/2000, well before CP&L filed a certificate to use its assumed name of Progress Energy Carolinas.  See FN 13.  Plaintiffs also asserted in their Response that witnesses Ray Casey, Eli Blanchard and Vance Oliver testified that they were Progress employees, citing "Exhibits 9-11 under seal."  Of the exhibits so named, however, only one contains a segment of a deposition of one of these witnesses.  The individual deposed in this exhibit did not testify that he was a Progress employee.  Review of the actual depositions of these witnesses reveals, at most, the comfort they had using the companies' names interchangeably, not confusion as to the identity of their employer.

[23] CP&L's use of the Progress name on Company Letterhead: See Dep. Ex. 7 (dated April 26, 2001), describing CP&L as "A Progress Energy Company."  Such a description does not indicate the companies are one and the same.

Plaintiffs will be able to meet their burden of proving equitable estoppel.[24]  As such, the court does not agree Progress should be equitably estopped from claiming it is not a proper party to this action.

[27]    Consequently, based upon the undisputed facts of this action, the court is forced to conclude as a matter of law that Progress is not a proper party to this action.

[28]    For the foregoing reasons, as to Plaintiffs' Claims applicable to Progress, there exist no genuine issues as to any material fact, and Progress is entitled to summary judgment in its favor with regard to such Claims.

[29]    It is therefore ORDERED that the Motion for Summary Judgment made by Defendant Progress Energy, Inc. is GRANTED, and all claims against Defendant Progress Energy, Inc. are hereby DISMISSED.

This the 12th day of November, 2009.

---

[24]  Three letters sent by ESG indicate, as a whole, the interchangeable use of the names Progress and CP&L, s*ee*, e.g., Dep. Ex. 5, Hutchins Dep. Ex. 135 and Dep. Ex. 15, but they do not prove the Plaintiffs' lack of knowledge or means of knowing the identity of the entity with whom they were conducting business; reliance on Progress; or such action based on the belief that CP&L and Progress were one and the same that prejudiced the Plaintiffs.