.HUSKI-BILT, INC., a Corporation, v. THE FIRST-CITIZENS BANK & TRUST COMPANY, a Corporation.

(Filed 1 November, 1967.)

1. Trial § 57—

Where the parties waive a jury trial and agree that the court find the facts, the court has the function of weighing the evidence, and its findings are conclusive on appeal if supported by any competent evidence, notwithstanding that evidence to the contrary may also have been offered.

2. Corporations § 1—

The fact that one corporation and its officers own substantially all of the stock of another corporation does not justify a disregard of the separate corporate entities unless there are additional circumstances showing fraud, actual or constructive, or agency.

3. Insurance § 9.1; Banks and Banking § 13— Lender collecting an paying credit life insurance to insurance company is not liable for unearned premiums.

The fact that a bank in discounting notes payable to a construction company requires credit life insurance to be taken out on the lives of each purchaser for the balance due on the houses purchased from the construction company, and further requires that such insurance be placed with a company in which the bank and its officers own a majority of the insurance company stock, and collects the premiums,˙ but then delivers the entire amount of the premiums to the insurance company, held not to render the bank liable for the unearned premiums upon prepayment of the loans, since, there being no basis for disregarding the separate corporate entities of the bank and the insurance company, such refunds would not be the liability of the bank but a liability of the insurance company, which refunds the insurance company would be required to pay to the individual borrowers rather than to the construction company. G.S. 58-44.7.

4. Usury § 1—

The fact that a bank lending money to a construction company on notes executed to the construction company by purchasers of houses from the construction company requires that the construction company pay premiums for credit life insurance on each of the purchasers, which premiums the bank delivers *in toto* to the insurance company issuing the policies, held not to constitute an exaction of usury in requiring such premiums in addition to the legal rate of interest, even though the bank and its officers own the majority of the stock of the insurance company, there being nothing to warrant disregard of the separate corporate entities of the bank and the insurance company. G.S. 58-32.

5. Same—

It is customary for a bank to charge interest in advance, and therefore where it lends a specified sum and adds thereto the interest on such sum for four years, the total to be repaid in installments during the four year term, the transaction does not constitute usury, provided the total amount of the interest paid does not exceed six per cent on the amount borrowed. G.S. 53-43(6).

APPEAL by plaintiff from *Riddle, S.J.*, 20 March 1967, Schedule "C" Session of the Superior Court of MECKLENBURG County.

The plaintiff alleged that it built homes in the Charlotte area, sold them to various purchasers, obtained down-payments, and took notes and deeds of trust for the balance due. Being unable to finance all of these balances, it sought a loan from the defendant, and a contract was entered between the parties whereby the Bank would lend fifty per cent (50%) of the balance due upon the notes and deeds of trust, taking them as security. It also required the personal endorsement of Cecil G. Huskey, the President of the plaintiff Corporation, and of his wife, and also that credit life insurance be taken upon the lives of the debtors, with the death benefits payable to the Bank. The plaintiff paid the premium on these policies to the Bank which in turn paid American Guaranty Life Insurance Company. This company later changed its name to American Defender Life Insurance Company, and it issued the policies.

In its first cause of action, the plaintiff alleged that the life insurance company was ninety per cent (90%) owned and controlled by the defendant and three of its principal officers; that he could have obtained the insurance for one-fourth the amount charged but that the defendant required that the insurance be issued by American Defender; that it executed its note for $324,442.80 on 4 February 1963; expended $27,962.35 for insurance premiums, paid the note before its due date on 17 March 1965, and was therefore entitled to a rebate of $15,411.94 for unearned premiums. The plaintiff demanded payment of this amount by the defendant which was refused, and the plaintiff sued to recover it.

For its second cause of action, the plaintiff alleged that upon its note of $324,442.80, it paid $41,329.92 interest which it claims to be usurious and seeks to recover double that amount: $82,659.84. It further alleged that the requirement that it take credit life insurance policies upon its debtors was a form of usury, since the insurance company was almost wholly owned by the defendants and its principal officers; and it sued to recover $40,512.76 as usury based upon these charges.

The defendant denied any charge of usury or that it controlled the insurance company, said that it had paid over all premiums collected to the insurance company, and that if the plaintiff were entitled to any rebate it was due from the insurance company, which is not a party to the action.

Mr. Cecil G. Huskey testified, in summary, that he was the President of Huski-Bilt, Inc., which was engaged in the construction business and that it built homes for people who already owned their own lots. The houses were financed by a down payment with an

eight-or ten-year note for the balance, secured by a deed of trust on the house and lot payable in monthly installments. His corporation needed financing, and after negotiations with Mr. Ernest Hicks, Assistant Vice President in charge of the Installment Loan Department of First Citizens Bank and Trust Company in Charlotte, an arrangement was made whereby the bank would lend Huski-Bilt one-half of the balance due on the note from the home owner. It executed its note for the amount borrowed, assigning the home owner's notes and deeds of trust to the bank as collateral. In addition, the bank required the personal endorsement of Mr. Huskey and his wife. After the first loan, the bank also required that a credit life insurance policy be carried upon the life of each of the home owners, benefits of which were to be paid to the bank upon the death of the debtor. A premium of one per cent per annum of the amount due on the deed of trust was required, and it was paid to the bank who remitted it in full to the American Defender Life Insurance Company. The witness protested the life insurance requirement, seeking to have the insurance taken on his life as guarantor and asserting that he could get credit life insurance for one-fourth the premium charged through the Bank, but without avail, and a total of $28,819.95 was paid as premiums.

The plaintiff introduced exhibits showing that as of October 1, 1961 his individual net worth was $332,583.15, and a later one showing his net worth to be $553,982.00 as of October 1, 1962.

Financial statements of Huski-Bilt showed it to be worth $32,866.00 as of November 10, 1960. A later one showed net worth of $153,361.00 as of December 31, 1961; still another showed net worth of $397,882.34 as of September 30, 1962.

The plaintiff testified that he first borrowed $33,000.00 from the defendant, giving a note for $40,920.00, which included interest on the amount borrowed and which was payable $852.50 per month. He testified that based upon a six per cent amortization schedule the monthly payments should have been $775.02 but that he was required to make payments of $77.48 more than the above figure. He further testified that later loans were made to his company with similar requirements and payments; that on February 4, 1963 the corporation executed its note to the defendant in the sum of $324,442.80 which represented the total amount due at that time, that it included interest of $41,329.92, and that the note was fully paid on March 17, 1965.

As to the requirement of credit life insurance on Huski-Bilt debtors, he testified that he requested that insurance be taken on his own life since he was the one who was borrowing from the bank;

that he was borrowing the money for only four years but he was required to take insurance for eight and ten years; that he wanted to purchase the insurance which he could get on a reduced term and a premium substantially less (one fourth) than that charged by the bank by going into the insurance business himself and getting seventy-five per cent (75%) commission back, but that the bank required that the insurance be purchased through it, and that the policy be issued by American Guaranty Life Insurance Company (later changed to American Defender Life Insurance Company). It was stipulated that the bank owned forty-four per cent (44%) of the stock of the life insurance company, and that the president, vice president, and chairman of the board of the bank, each owned seventeen per cent (17%) of its stock, making a total of ninety-five per cent (95%) of the insurance company's stock held by the bank and its principal officers.

In addition to the conversations with Mr. Hicks, Huskey testified that he also dealt with Mr. Robert Johnson, who succeeded Hicks as manager of the bank. These conversations related largely to the insurance arrangement in which the plaintiff sought to purchase insurance from other companies, asserting that it could become agent for them and get a commission or rebate of seventy-five per cent (75%) of the premium, which would reduce its costs to twenty-five per cent (25%) of the amount charged by the bank. He testified that Mr. Johnson told him that this proposal was not acceptable because "we've got to make some money too." Mr. Johnson told the witness that in the event of prepayment of a deed of trust a refund of the unearned insurance premiums would be made. At one time the bank refunded $3,003.17 for unearned premiums on certain mortgagors. After its indebtedness was paid on 17 March 1965, the plaintiff requested refunds for the unearned premiums which were refused, the bank claiming that any refund due was the obligation of the insurance company and not of the bank.

The witness identified the certificate issued by the insurance company which provided that upon due proof of death of a borrower the insurance was payable to the bank as its interest may appear and a surplus "to any relative by blood or connection by marriage of the Borrower or to the Estate of the Borrower."

Mr. Ernest L. Hicks, Assistant Vice President, was adversely examined by the plaintiff. He testified that the bank required that deeds of trust and notes of the home owners be assigned to it as collateral for any loans, and that Mr. and Mrs. Huskey act as sureties thereon. And further, that credit life insurance for the period of the borrower's loan in an amount equal to the face amount

of the note from the customer be furnished. That he was a licensed agent for American Defender Life Insurance Company of Fayetteville, and that he collected the premiums which were transmitted in full to the insurance company with no deduction or commission being charged by the bank. Mr. Hicks testified that in the event Huski-Bilt paid off its master note that there would be a rebate to it of any unearned premiums on condition that the customer presented the original certificate of insurance or a lost policy release. He said that as to any rebate for unearned premiums where a note was paid prior to its due date, he could only present to the insurance company the original certificate of insurance, and that the insurance company, rather than the bank would be responsible for any rebate.

Mr. Hicks also said that for the first loan requiring credit life insurance coverage, one hundred per cent (100%) on the outstanding balance was required but that only fifty per cent (50%) was demanded in subsequent transactions.

The defendant offered the evidence of Robert L. Johnson, Assistant Vice President of the Bank, who testified that after Mr. Hicks had negotiated the first three loans with the plaintiff, he was transferred to the Asheville Branch of the bank and that he, Johnson, succeeded him in the Charlotte office and negotiated the other loans; that after Mr. Huskey paid off his note in March 1965, the witness told the latter that if he would deliver the original policies or lost policy releases issued to the home owner that refunds would be issued; that this was done as to one policy and it was forwarded to American Defender to be canceled; that a refund was offered by the insurance company to Mr. Huskey which he would not accept. At the time the loan was paid off, Johnson said he had in his possession what would be required to cancel any coverage and to pay the unearned premium to Huski-Bilt, which he turned over to Huskey, and that Mr. Huskey had not brought them back to process.

The above summary of the evidence offered by the plaintiff and the defendant does not purport to be complete, but it is a synopsis of all of the evidence considered pertinent to the decision.

The parties agreed that the Judge could hear and determine the matter without the intervention of the jury.

Judge Riddle made findings of fact and thereupon held as a matter of law that upon the first cause of action there were no unearned premiums due the plaintiff by the defendant, and that the plaintiff was not entitled to recover. As to the second cause of action, he held that the payment of premiums for life insurance did not constitute payments of interest to the defendant; that defendant did not

charge nor collect from plaintiff interest greater than six per cent (6%) and that the plaintiff was not entitled to recover on this cause.

The plaintiff made numerous exceptions to the findings of fact and conclusions of law, and appealed.

*Warren C. Stack and James L. Cole, Attorneys for plaintiff appellant.*

*Ward and Tucker; Boyle, Alexander and Carmichael by R. C. Carmichael, Jr., Attorneys for defendant appellee.*

PLESS, J.   The plaintiff's first cause of action is based upon its claim that the American Defender Life Insurance Company was almost fully owned by the defendant and its three principal officers. It contends that when the bank required it to expend some $38,000.00 for insurance premiums, which went to its alleged subsidiary or alter ego, it constituted gross profit; that premiums were required to be paid for the entire length of the term of the deeds of trust assigned as security (in most cases ten years), although the loans to the plaintiff were for a term of only four years; that defendant covenanted with plaintiff that unearned premiums would be refunded if defendant released any of plaintiff's mortgages assigned to defendant as security, and that on one occasion premiums were so refunded; that on March 17, 1965, plaintiff repaid all loans obtained from the defendant and defendant released to plaintiff all deeds of trust and notes held by it as security for the loan; that plaintiff has made numerous demands for refund of unearned premiums since that time and defendant has refused to make such refund. Therefore, it is claimed defendant is now indebted to plaintiff in the amount of the unearned premiums, to wit: $15,411.94.

Upon hearing the evidence, considering the motions, and the plaintiff's requested findings of fact, the Court made its own findings of fact and entered its judgment to the effect that the parties entered into an agreement on 3 January 1961; that the defendant agreed to and did make loans to the plaintiff. The loans were secured by notes and deeds of trust upon the property of the plaintiff's debtors guaranteed by Mr. and Mrs. Huskey, and that in addition the plaintiff obtained policies of credit life insurance upon the lives of its customers; that all policies were written by American Defender Life Insurance Company (formerly American Guaranty Life Insurance Company), and as each policy was issued it was delivered to the named insured; that they were written for the terms of the debtor's indebtedness which are still in being and are in effect and enforce-

able by the beneficiaries thereof. The Court further found that the premiums for these policies were paid by the plaintiff to the defendant, and the defendant then delivered the entire amount of the premiums to the insurance company.

The Court found as a fact that the bank and the insurance company were separate corporations; that if the plaintiff were entitled to any refund it was due by the insurance company (which is not a party to the action) and not by the bank.

The Court concluded as a matter of law that there were no unearned premiums due the plaintiff by the defendant, and the plaintiff was not entitled to recover anything from the defendant on this cause of action.

It is the rule in North Carolina that where the parties waive a jury trial and agree that the Court may find the facts, they thereby transfer to the Judge the function of weighing the evidence, and his findings are conclusive on appeal if supported by any competent evidence, notwithstanding the fact that evidence to the contrary may have been offered. *Young v. Insurance Company*, 267 N.C. 339, 148 S.E. 2d 226 (1966); *Williams v. Williams*, 261 N.C. 48, 134 S.E. 2d 227 (1964).

From the Court's statement of facts, in which the evidence is summarized, it will be seen that the evidence, even though controverted, supports the findings of fact, which, in turn, support the conclusions of law.

Throughout the plaintiff's case is its basic contention that since the bank and its officers owned substantially all of the stock of American Defender Life Insurance Company that the two were, in effect, one entity, and that the insurance company was merely an *alter ego* or puppet of the bank. Unless it can prevail upon that assertion, the plaintiff has no case. Upon the argument before us, counsel for the plaintiff, with his usual candor, said that without that contention, "we wouldn't be here."

The plaintiff is being realistic in his position. But it is confronted by almost unanimous authorities which afford little comfort. 1 Fletcher, Cyclopedia Corporations, § 28, p. 124, states the rule:

> "That one person or corporation may own a majority or even all of the stock of a corporation does not establish a legal identity between the stockholder and it, so as to make acts by one the acts of the other. The powers of two such corporations are distinct and proper to each other, and the powers of a corporation are not denied to it merely because it is subsidiary to another."

The Judge's ruling upon the second cause of action was in accord. He found that the loans were made by the bank to the plaintiff upon the terms alleged in the first cause of action; that at the time each loan was made "the defendant deducted from the proceeds of such loan interest at a rate not exceeding six per cent (6%) per annum" and held as a matter of law that the payments of premiums by the plaintiff for credit life insurance did not constitute payments of interest to the defendant; that the defendant did not charge nor collect from plaintiff at any time interest at a rate greater than six per cent (6%) per annum, and the plaintiff was not entitled to recover anything on its second cause of action, and the cause was thereupon dismissed.

91 A.L.R. 2d 1349, *et seq.*, fully digests the law on this subject. It says:

> "It has generally been held that the requirement by a lender, whether an insurance company or otherwise, that the borrower should, as a condition for obtaining the loan, take out and pay premiums on a policy of insurance, and assign it to the lender as additional security for the loan, . . . does not, though making the cost of the loan exceed the highest legal interest, necessarily constitute usury where there is no showing that the requirement is intended to be, or is exacted as, a mere shift or device to cover usury."

> Other sections of the above annotation say "the fact that a lender required its borrowers to purchase . . . credit life . . . insurance . . . and to place such insurance with companies wholly owned by it, did not render the loan transactions usurious where the evidence showed that the insurance was actually written and put in force by the insurance companies for the premiums customarily charged for like insurance, and that the premiums charged for the insurance were actually paid over to the companies and the borrowers were mailed the policies. . . .

> "[T]he compensation which the lender might legally demand was determined not by what the borrower paid but what the lender received."

Dealing with the subject of separate corporate entities, we find that in the recent case of *Accept. Corp. v. Spencer*, 268 N.C. 1, 149 S.E. 2d 570, our Chief Justice Parker, writing the most thorough opinion we have found on the subject, said:

> "Ordinarily, a corporation retains its separate and distinct identity where its stock is owned partly or entirely by another

corporation. 18 C.J.S., Corporations, § 5(j), p. 375. See *Troy Lumber Co. v. Hunt*, 251 N.C. 624, 112 S.E. 2d 132.

"This is said in 19 Am. Jur. 2d, Corporations, § 717:

" 'The fact that a corporation owns the controlling stock of another does not destroy the identity of the latter as a distinct legal entity; and, ordinarily, no liability may be imposed upon the latter for the torts of the subsidiary corporation. The facts that corporations have common officers, occupy common offices, and to a certain extent transact business for each other do not make the one corporation liable for the action of the other, except upon established legal principles. However, a corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded.'

"In *Whitehurst v. FCX Fruit and Vegetable Service*, 224 N.C. 628, 32 S.E. 2d 34, it was held that the mere fact that one corporation owns all the capital stock of another corporation, and the further fact that the members of the board of directors of both corporations are the same, nothing else appearing, is not sufficient to render the parent corporation liable for the contracts of its subsidiary. In order to establish liability on the part of the parent corporation on such contracts, there must be additional circumstances showing fraud, actual or constructive, or agency.

"In 1 Fletcher, Cyclopedia Corporations, perm. ed., p. 204 *et seq.*, it is said: 'The control necessary to invoke what is sometimes called the "instrumentality rule" is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal. It must be kept in mind that the control must be shown to have been exercised at the time the acts complained of took place in order that the entities be disregarded at the time.'

"The clearest statement we have found with respect to this area of the law is in *Lowendahl v. Baltimore & O. R. Co.*, 247 App. Div. 144, 287 N.Y.S. 62, 76, affirmed 272 N.Y. 360, 6 N.E. 2d 56, where the Court said:

" 'Restating the instrumentality rule, we may say that in

any case, except express agency, estoppel, or direct tort, three elements must be proved:

" ' "(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

" ' "(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

" ' "(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." See Powell "Parent and Subsidiary Corporations," chapters I to VI, passim, and numerous cases cited.' "

The plaintiff has not offered the proof to meet the above requirements. There is ample evidence to support the Judge's finding that the bank and the insurance company were separate corporations and that the payment of premiums by the plaintiff for credit life insurance did not constitute payments of interest to the defendant. Upon the latter ruling, the Court's finding is supported by G.S. 58-32 which provides that when an insurance company requires a borrower to insure either his life or that of another with the company as a condition of a loan, the premiums paid for the insurance shall not be considered as interest, and the loan will not be rendered usurious by reason of such requirement. The statute also includes this clause: "nor will any loan be rendered usurious by reason of any such requirements . . ." Without deciding that this broad provision would include a bank which required insurance as condition for a loan, we think it demonstrates the legislative intent which the cited decisions support.

In view of the foregoing, the plaintiff's claim of usury can be sustained, if at all, only upon the payments made to the bank, disregarding payment for insurance premiums. A careful mathematical calculation demonstrates that the charges denominating interest by the bank, standing alone, amount in each instance to less than six per cent (6%). In fact, less than five per cent (5%) was charged upon several. The plaintiff claims that when it borrowed $33,000 and was required to add a sufficient amount to pay interest on the sum borrowed for a four-year period (which came to $7,920) and it was thus required to execute a note for $40,920, that this was a usurious requirement. However, G.S. 53-43(6) provides that a bank, upon making a loan, may deduct in advance from the proceeds of the

loan interest at a rate not exceeding six per cent (6%) per annum from the date of the loan until materialization of the final installment, even though the principal amount of the loan is to be repaid in installments. It is general banking practice to require that interest be paid in advance. The plaintiff wanted $33,000. Had it been required to pay the interest from that sum, it would have received $7,920 less than it sought to borrow. By adding the interest to the principal of the note, it paid only six per cent (6%) on the amount borrowed, and this would appear to be the most convenient method of payment. In *Ray v. Insurance Co.*, 207 N.C. 654, 178 S.E. 89, a similar transaction was upheld, the Court saying: "None of the notes which plaintiff executed, and which were subsequently paid, were tainted with usury."

Upon the claim of the plaintiff that the bank failed to refund unearned insurance premiums, it must be recalled (1) that *if* a refund were due it was (a) due by the insurance company and (b) that since the plaintiff was not the beneficiary in the policies, the ones who were, that is, the heirs and next of kin of the insureds, would be entitled to the refund; and (2) that under G.S. 58-44.7 the bank could not have legally made a refund of money which had gone, even through its hands, to the insurance company. That statute provides that it is unlawful for an insurance company writing credit life insurance in connection with a loan to permit any agent to pay any rebate or refund any premiums without the consent of the policy holders.

We have considered the many authorities cited by the plaintiff but find that they are either not applicable to the facts found in this case, or that they represent minority rulings.

The quotations and citations in this opinion are not in every instance unanimously accepted by all courts, but they do represent the general rulings and have been approved by a majority of the courts dealing with the subjects discussed. We are of the opinion that they are sound, and we have therefore adopted them.

All of the exceptions filed by the plaintiff have been properly considered. We find that there was evidence to support Judge Riddle's findings of fact, that the rulings of law are correct, and that in the trial there was

No error.