WACHOVIA BANK, NATIONAL ASSOCIATION, F/K/A WACHOVIA BANK, N.A. AND F/K/A WACHOVIA MORTGAGE COMPANY, GOVERNOR'S LANDING, LLC, CHARLES PASQUALE, AND JOANNE PASQUALE, PLAINTIFFS v. CLEAN RIVER CORPORATION AND PETER D. KOKE, DEFENDANTS AND ASSURANCE COMPANY OF AMERICA, ZURICH AMERICAN INSURANCE COMPANY, MARYLAND CASUALTY COMPANY, HOME BUILDERS INSURANCE COMPANY, HOME BUILDERS INSURANCE SERVICES, INC., HOME BUILDERS INSURANCE SERVICE, INC., AND ZURICH INSURANCE SERVICES, INC., DEFENDANTS/THIRD-PARTY PLAINTIFFS v. DAVID STEIGERWALD, BERNHARDT CONSTRUCTION GROUP, LLC, LENORD WERSAN, JOHN PAULSON, GLOBAL LOSS SERVICES, INC., AND ARTHUR WADDELL, THIRD PARTY-DEFENDANTS AND DAVID STEIGERWALD, PLAINTIFF v. CLEAN RIVER CORPORATION, AND PETER D. KOKE, DEFENDANTS AND ASSURANCE COMPANY OF AMERICA, ZURICH AMERICAN INSURANCE COMPANY, MARYLAND CASUALTY COMPANY, HOME BUILDERS INSURANCE COMPANY, HOME BUILDERS INSURANCE SERVICES, INC., HOME BUILDERS INSURANCE SERVICE, INC., AND ZURICH INSURANCE SERVICES, INC., DEFENDANTS/THIRD-PARTY PLAINTIFFS v. WACHOVIA BANK, NATIONAL ASSOCIATION, F/K/A WACHOVIA BANK, N.A. AND F/K/A WACHOVIA MORTGAGE COMPANY, GOVERNOR'S LANDING, LLC, CHARLES PASQUALE, JOANNE PASQUALE, BERNHARDT CONSTRUCTION GROUP, LLC, LENORD WERSAN, JOHN PAULSON, GLOBAL LOSS SERVICES, INC., AND ARTHUR WADDELL, THIRD-PARTY DEFENDANTS

No. COA05-1364

(Filed 18 July 2006)

## Discovery— privileged material—work-product doctrine

The trial court did not abuse its discretion in a breach of contract, misrepresentation, breach of the duty of good faith and fair dealing, and breach of fiduciary duty case by compelling Zurich defendants' production of alleged privileged material, because: (1) defendants could have, but chose not to, produce the Group B documents for an in camera inspection as evidenced by their submission of Group A documents for in camera inspection; (2) no attorney-client privilege is at issue regarding the Group A documents; and (3) the trial court's determination that defendants retained the work-product privilege from 20 December 2001 and forward was reasonable, and the work-product doctrine covers documents respecting claim reserve data from 20 December 2001 forward.

Appeal by defendants from order entered 5 July 2005 by Judge Benjamin G. Alford in New Hanover County Superior Court. Heard in the Court of Appeals 10 May 2006.

WACHOVIA BANK v. CLEAN RIVER CORP.

[178 N.C. App. 528 (2006)]

*Maupin Taylor, P.A., by Daniel Lee Brawley and Smyth & Cioffi, LLP, by Theodore B. Smyth, for plaintiffs-appellees.*

*Nexsen Pruet Adams Kleemeier, PLLC, by James W. Bryan and Gary L. Beaver and Cozen O'Connor, P.C., by Kimberly Sullivan for defendants-appellants.*

CALABRIA, Judge.

Assurance Company of America, Zurich American Insurance Company, Maryland Casualty Company, Home Builders Insurance Company, Home Builders Insurance Services, Inc., Home Builders Insurance Service, Inc., and Zurich Insurance Services, Inc. ("the Zurich defendants" or "Zurich") appeal the discovery order compelling the production of alleged privileged material. We affirm.

On 3 February 2000, Bernhardt Construction Group, LLC, ("Bernhardt") and Wildman & Bernhardt Construction, Inc. ("Wildman") constructed a luxury townhouse community, referred to as Governor's Landing Townhouse Project ("the project"), for plaintiff Governor's Landing, LLC, ("Landing"), owner of real property at 2 Nun Street, Wilmington, North Carolina ("the property"). Plaintiffs Wachovia Bank, National Association ("Wachovia"), and Charles and Joanne Pasquale ("the Pasquales") financed the project with loans secured by deeds of trust on the property. In addition, plaintiff David Steigerwald ("Steigerwald"), the project manager for Landing, provided financial assistance. The contract required Bernhardt to maintain builder's risk insurance including coverage for Landing, Wachovia, and the Pasquales as additional insured parties. On 28 February 2000, the Builder's Risk Policy ("the policy"), number BR96090395, Zurich issued identified only Bernhardt as the named insured.

On 27 October 2000, Bernhardt informed Zurich of potential water and mold damage to the property. Bernhardt claimed "wind driven rain" caused the damage. Further, Bernhardt claimed the damage occurred after the roof had been installed. Zurich's investigation of Bernhardt's claims revealed "the water damage and subsequent mold invasion . . . is a covered loss." Steigerwald informed Zurich that plaintiffs should have been listed as additional insured parties under the existing policy. Plaintiffs contend certificates of insurance they signed, issued approximately one month prior to Zurich's payment to Bernhardt, on 26 January 2001, are retroactive from 1 February 2000.

However, Zurich contends plaintiffs were not insured. On 19 February 2001, Zurich issued a check to Bernhardt for $430,000 as part of a release and settlement agreement.

Several months after Zurich settled with Bernhardt, Steigerwald communicated to Zurich he believed Bernhardt's claim was fraudulent. Steigerwald reported his belief that the water and mold damage occurred prior to the roof installation. In October of 2001, the North Carolina Department of Insurance ("the NCDOI") began investigating Steigerwald's fraud allegations. Zurich communicated with the NCDOI during their investigation.

On 20 December 2001, Kelly M. Toms ("Toms"), Steigerwald's attorney, wrote a letter to Zurich asserting a claim against the Zurich defendants under the policy. Further, on 21 and 27 February 2002, Wachovia, Landing, and the Pasquales each asserted claims against Zurich under the policy. On 3 June 2003, plaintiffs filed a complaint against the Zurich defendants asserting, *inter alia*, breach of contract, misrepresentation, breach of the duty of good faith and fair dealing, and breach of fiduciary duty. Zurich filed an answer and asserted multiple defenses as well as counterclaims, cross-claims, and a third-party complaint. On 13 June 2003, plaintiffs served Zurich a "first request for production of documents" to which Zurich partly complied and partly refused believing that certain documents were "confidential." On 26 May 2005, plaintiffs filed a "motion to compel and request for removal of confidential designations." Five days later, Zurich filed a "motion for protective order." The trial court heard the motions on 6 June 2005. Three days later, on 9 June 2005, the trial court conducted an *in camera* inspection of twelve documents ("the Group A documents") requested by the plaintiffs. However, nearly four-hundred-and-fifty (450) documents ("the Group B documents") were not produced for an *in camera* inspection. Zurich alleged those were privileged documents. On 5 July 2005, the trial court entered a discovery order compelling Zurich to produce documents requested by the plaintiffs. In its order, the trial court found the following: Zurich waived attorney-client privilege; the work-product doctrine did apply but only as to documents generated subsequent to 20 December 2001, the date set by the trial court as commencing the work-product privilege; and, documents submitted by Zurich to the NCDOI as well as claim reserve information were discoverable if produced prior to 20 December 2001. Zurich appeals.

WACHOVIA BANK v. CLEAN RIVER CORP.

[178 N.C. App. 528 (2006)]

I. *Discovery Matters and Burden of Proof*:

A. Documents not Submitted for *In Camera* Review:

Appellants argue the trial court erred and abused its discretion in ordering the discovery of alleged privileged documents. Appellants contend the trial court declined to conduct an *in camera* review. We disagree.

"[O]rders regarding discovery matters are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of that discretion." *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 601, 617 S.E.2d 40, 45 (2005), *aff'd*, 360 N.C. 356, 625 S.E.2d 779 (2006) (internal quotation marks and citation omitted). "To demonstrate an abuse of discretion, *the appellant* must show that the trial court's ruling was manifestly unsupported by reason, or could not be the product of a reasoned decision." *Id.* 172 N.C. App. at 601 (citations omitted) (emphasis added). "[Defendants] could have requested that the trial court review the documents *in camera* and then seal the documents for possible appellate review." *Miller v. Forsyth Mem'l Hosp., Inc.*, 174 N.C. App. 619, 621, 625 S.E.2d 115, 116 (2005). "*In camera* review allows the trial court to direct that the requested information be produced under seal for determination by it of relevancy or potential for leading to discovery of admissible evidence." *Id.* 174 N.C. App. at 621, 625 S.E.2d at 116-17. "Any material which the court determines not to be discoverable may then be preserved under seal for review on appeal should *further consideration by this Court* become necessary." *Id.* 174 N.C. App. at 621, 625 S.E.2d at 117 (emphasis added). The party seeking either attorney-client privilege or work-product privilege bears the burden of proof. *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 29, 32, 541 S.E.2d 782, 789, 791 (2001).

In the instant case, appellants alleged approximately four-hundred-and-sixty-two (462) total documents were privileged. On 6 June 2005, the trial court heard appellees' motion to compel and appellants' motion for a protective order. At the hearing, counsel for appellants told the court that within the next week or two, appellants could produce certain alleged privileged documents relating to "factual information" as well as a privilege log in an effort to reduce the workload of the court. However, none of the alleged privileged documents were submitted to the trial court at that time. On 9 June 2005, appellants produced the Group A documents for an *in camera* inspection by the trial court, but did not produce the Group B docu-

ments for an *in camera* inspection at that time. On 10 June 2005, appellants corresponded with the trial court via a letter containing, *inter alia*, a privilege log. However, appellants still did not produce the Group B documents for an *in camera* inspection at that time. Twenty days later, on 30 June 2005, appellants faxed a letter to the trial court requesting an *in camera* inspection of the Group B documents, however, these documents were not included with the fax. That same day, Judge Alford signed the discovery order.

Pursuant to *Evans* and *Nationwide, supra*, appellants bear the burden to illustrate the privilege alleged. Here, appellants communicated with the trial court on three separate occasions: the hearing, a letter, and a facsimile transmission in a twenty-four (24) day window, yet never produced the Group B documents for an *in camera* inspection. Appellants could have, but chose not to, produce the Group B documents for an *in camera* inspection, as evidenced by their prior submission of Group A documents on 6 June 2005. Consequently, appellants failed to carry their burden with respect to the Group B documents. We discern no abuse of discretion by the trial court in ordering the production of documents appellants failed to provide for an *in camera* review. Appellants' assignments of error with respect to the Group B documents are overruled.

B. Documents Submitted for *In Camera* Review:

Appellants carried their burden regarding the Group A documents by submitting them for an *in camera* inspection. Therefore, we turn our attention first to whether attorney-client privilege, work-product privilege, or statutory privilege attached to the Group A documents. After a thorough inspection of the Group A documents, we conclude that no attorney-client privilege is at issue. Further, all of the documents submitted by Zurich to the NCDOI were Group B documents and, thus, because appellants failed to carry their burden as to the Group B documents, no statutory privilege is at issue. However, that same inspection reveals that the work-product privilege attached. Thus, we must determine whether the trial court abused its discretion when it concluded appellants' work-product privilege existed from 20 December 2001 forward. We hold the trial court did not abuse its discretion.

The work-product doctrine "forbids the discovery of documents and other tangible things that are 'prepared in anticipation of litigation' unless the party has a substantial need for those materials and cannot 'without undue hardship . . . obtain the substantial equivalent

of the materials by other means.' " *Long v. Joyner*, 155 N.C. App. 129, 136, 574 S.E.2d 171, 176 (2002) (quoting N.C. Gen. Stat. § 1A-1, Rule 26(b)(3) (2005)).

> It is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interest.

*State v. Dunn*, 154 N.C. App. 1, 13, 571 S.E.2d 650, 658 (2002) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11, 91 L. Ed. 451, 462 (1947)). Consequently, " '[t]he [work-product] doctrine was designed to protect the mental processes of the attorney from outside interference and provide a privileged area in which he can analyze and prepare his client's case.' " *State v. Prevatte*, 356 N.C. 178, 218, 570 S.E.2d 440, 462 (2002) (quoting *State v. Hardy*, 293 N.C. 105, 126, 235 S.E.2d 828, 841 (1977)).

"The protection given to matters prepared in anticipation of trial, or work product, is not a privilege, but a qualified immunity." *Velez v. Dick Keffer Pontiac-GMC Truck, Inc.*, 144 N.C. App. 589, 594, 551 S.E.2d 873, 876 (2001) (citations and internal quotation marks omitted). Furthermore, while "[m]aterials . . . prepared in the ordinary course of business . . . are not protected by the work product immunity . . . work product containing . . . mental impressions, conclusions, opinions, or legal theories of an attorney . . . concerning the litigation in which the material is sought is not discoverable." *Id.* 551 S.E.2d at 877 (citations and internal quotation marks omitted). Nevertheless, "[b]ecause work product protection by its nature may hinder an investigation into the true facts, it *should be narrowly construed* consistent with its purpose[,] which is to safeguard the lawyer's work in developing his client's case." *Evans*, 142 N.C. App. at 29, 541 S.E.2d at 789 (emphasis added) (citations and internal quotation marks omitted).

In the instant case, the trial court concluded that appellants retained the work-product privilege from 20 December 2001 forward. Pursuant to *Nationwide, supra,* appellants must illustrate the trial court's determination was "manifestly unsupported by reason, or

could not be the product of a reasoned decision." However, the trial court's decision was reasonable. For instance, several Group A documents inspected by the trial court included three letters dated 17 July 2002 from Zurich to plaintiffs Steigerwald, Wachovia, Landing, and the Pasquales informing them Zurich believed their claims were not covered under the policy. Specifically, the letter from Zurich to Steigerwald acknowledged Toms asserted a claim under the policy in a letter to Zurich dated 20 December 2001. Toms stated, in pertinent part, "[r]egarding my client's claims against Zurich and its agents, I am in the process of *completing a complaint which will be filed soon.*" (emphasis added). The letter to Wachovia acknowledged Wachovia asserted a claim under the policy on 21 February 2002. The letter to Landing and the Pasquales acknowledged both parties asserted a claim under the policy dated 27 February 2002. Therefore, pursuant to an abuse of discretion standard, *see Nationwide, supra,* the trial court reasonably determined the earliest date Zurich anticipated litigation from plaintiffs was 20 December 2001. Consequently, the trial court did not abuse its discretion.

Additionally, the trial court's order required the Zurich defendants to supply documents regarding claim reserve information. The trial court noted "[a]ny information pertaining to [claim] reserves generated on or after December 20, 2001 is protected pursuant to the Work-Product Doctrine[.]" The trial court reasoned these documents were work-product items, but only from the date the trial court determined as the date the privilege was initiated. Since the trial court previously determined 20 December 2001 was the appropriate date for the inception of the work-product doctrine, we also hold the work-product doctrine covers documents respecting claim reserve data from 20 December 2001 forward. Furthermore, as to appellants' argument claiming that reserve information is not reasonably calculated to lead to the discovery of admissible evidence, we discern no abuse of discretion in the trial court's decision to deem these documents discoverable. Appellants' assignments of error with respect to the Group A documents are overruled.

Affirmed.

Judges BRYANT and STEELMAN concur.