IN THE SUPREME COURT OF NORTH CAROLINA

No. 279A19

Filed 14 August 2020

GLOBAL TEXTILE ALLIANCE, INC., Plaintiff

v.

TDI WORLDWIDE, LLC, DOLVEN ENTERPRISES, INC., TIMOTHY DOLAN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc. and an officer and owner of TDI Worldwide, LLC; JAMES DOLAN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc., STEVEN GRAVEN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc., RYAN GRAVEN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc., GARRETT GRAVEN, individually, GFY INDUSTRIES LIMITED, GFY, LIMITADA de CAPITAL VARIABLE, GFY COOPERATIVE, U.A., 上海冠沣源贸易有限公司 a/k/a GFY SH, and FRESH INDUSTRIES, LTD.,  Defendants

Appeal pursuant to N.C.G.S. § 7A-27(a)(3) from the order compelling discovery entered on 26 February 2019 by Judge Gregory P. McGuire, Special Superior Court Judge for Complex Business Cases, in Superior Court, Guilford County, after the case was designated a mandatory complex business case by the Chief Justice pursuant to N.C.G.S. § 7A-45.4(b). Heard in the Supreme Court on 16 June 2020.

*Hagan Barrett PLLC, by J. Alexander S. Barrett, Charles T. Hagan III, and Kurt. A. Seeber, and Akin Gump Strauss Hauer & Feld LLP, by Stanley E. Woodward, Jr., for plaintiff-appellant.*

*Ellis & Winters LLP, by Jon Berkelhammer, Steven A. Scoggan, and Scottie Forbes Lee, for defendant-appellee Steven Graven, K&L Gates LLP, by A. Lee Hogewood III, John R. Gardner, and Matthew T. Houston, for defendant-appellees Dolven Enterprises, Inc., Ryan Graven, and GFY Cooperative, U.A., James McElroy & Diehl, P.A., by Fred B. Monroe and Jennifer M. Houti, for defendant-appellees TDI Worldwide, LLC and Timothy Dolan, Morningstar Law Group, by Shannon R. Joseph and Jeffrey L. Roether, for defendant-appellee Garrett Graven, and Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Eric M. David and Shepard D. O'Connell, for defendant-appellee*

*James Dolan.*

NEWBY, Justice.

This case is about whether a one-hundred percent shareholder of a corporation is that corporation's alter ego for the purposes of privilege against discovery. Specifically, we must decide whether communications with someone who is an agent of the sole shareholder, but not of the corporation, fall under the corporation's attorney-client privilege or the work-product doctrine. They do not. Once a corporate form of ownership is properly established, the corporation is an entity distinct from the shareholder, even a shareholder owning one-hundred percent of the stock. An agent of the shareholder is not automatically an agent of the corporation. We also must decide whether the Business Court should have conducted an exhaustive in camera review of all relevant communications, even though plaintiff invited the court to conduct a more limited review of a sample of documents. The Business Court's limited review in this case was appropriate. Because the Business Court did not abuse its discretion either by ordering production of the relevant communications or by conducting a limited review of those communications, that court's decision is affirmed.

Global Textile Alliance, Inc. (GTA), the sole plaintiff, is a North Carolina corporation with its principal place of business in Reidsville, North Carolina. Luc Tack is GTA's only shareholder. Remy Tack, Luc Tack's son, is GTA's Chief Executive Officer. As a corporation, GTA is governed by a board of directors. GTA filed this

lawsuit in the Business Court against defendants, alleging that defendants engaged in several improper acts during the formation and operation of Dolven Enterprises, Inc.

During discovery, defendants asked GTA to identify Stefaan Haspeslagh as a custodian required to provide electronically stored information (ESI). Haspeslagh is Luc Tack's longtime friend, financial advisor, and advisor to some of Luc Tack's businesses. GTA did not comply with defendants' request, asserting that Haspeslagh is not an employee, officer, or director of GTA. Both Luc Tack and Remy Tack testified that Haspeslagh has no role with GTA and that Haspeslagh has not advised GTA about this lawsuit.

On 24 July 2018 the Business Court heard oral argument on the custodial issue. GTA's counsel argued that Haspeslagh was "a third-party consultant not retained by GTA, [but] retained by the Tacks." Based on this assertion, the Business Court determined that Haspeslagh was not a custodian of GTA documents. Thus, it did not require GTA to name Haspeslagh as a custodian required to provide defendants with ESI during discovery.

Months later, GTA produced a privilege log that identified categories of documents that GTA had withheld from defendants during discovery. One category of documents was described as "[c]onfidential correspondence between GTA and/or its outside counsel and Stefaan Haspeslagh conveying and/or summarizing legal advice regarding the matters giving rise to the instant litigation." GTA claimed that

these communications were protected on the grounds of the attorney-client privilege and the work-product doctrine. GTA's attorneys instructed witnesses not to answer questions about their discussions with Haspeslagh.

Defendant Steven Graven filed a motion with the Business Court to compel GTA to produce the communications involving Haspeslagh and to instruct the witnesses to answer questions about their discussions with Haspeslagh. Defendant argued that GTA waived the attorney-client privilege by including Haspeslagh on communications with GTA's counsel.

GTA responded that its attorney-client privilege extends to communications involving Haspeslagh. It argued that Haspeslagh is GTA's agent because Luc Tack is GTA's sole shareholder and because Haspeslagh works for some of Luc Tack's businesses. GTA also asserted privilege on two other special bases: (1) Haspeslagh is the functional equivalent of Luc Tack's employee, and (2) communications with Haspeslagh are privileged under the *Kovel* doctrine.

The motion to compel was submitted to a special discovery master. The special master heard oral argument on 5 February 2019, and on 7 February 2019 recommended that the Business Court grant defendant's motion to compel.

The Business Court conducted a de novo review of the special master's recommendation. As part of its review, the Business Court asked GTA to submit all disputed documents for in camera review. GTA responded that it would "gather the correspondence as requested and submit the documents." When GTA failed to

produce the documents promptly, the Business Court requested that GTA provide a timeframe for the documents' production. GTA responded that it "hoped to review the [documents] before providing them to the Court" and that it wanted more time to do so. The Business Court accommodated GTA by instead allowing it to submit "a reasonable sampling of such communications." GTA agreed and submitted twelve emails involving Haspeslagh for in camera review. After this review, GTA did not ask the Business Court to review additional documents.

On 26 February 2019 the Business Court issued an order granting the motion to compel. GTA filed a motion for reconsideration with the Business Court. In its brief supporting the motion for reconsideration, GTA quoted selected portions from the allegedly privileged materials. After denial of its motion for reconsideration, GTA appealed to this Court.

GTA raises three issues on appeal. First, GTA argues that the Business Court erred by determining that communications involving Haspeslagh are not protected by the attorney-client privilege. Second, it argues that the Business Court erred by determining that communications involving Haspeslagh are not protected under the work-product doctrine. Third, it argues that the Business Court erred by not conducting an exhaustive in camera review of all communications involving Haspeslagh. Because we conclude that the Business Court did not abuse its discretion regarding any of these issues, we affirm.

First, the Business Court did not abuse its discretion by determining that

communications involving Haspeslagh are not privileged under the attorney-client privilege. This Court reviews a trial court's application of the attorney-client privilege for abuse of discretion. *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 370 N.C. 235, 241, 805 S.E.2d 664, 669 (2017). As the party asserting the attorney-client privilege, GTA has the burden of establishing that privilege. *See State v. McNeill*, 371 N.C. 198, 240, 813 S.E.2d 797, 824 (2018). Communications do not merit the attorney-client privilege when they are made in the presence of a third party. *State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981). GTA has asserted several arguments that communications including Haspeslagh are protected under the attorney-client privilege. In essence, each of GTA's arguments improperly treat Haspeslagh as an agent of GTA who merits protection under the attorney-client privilege for conversations with GTA's attorneys.

GTA argues that Luc Tack and GTA are the same entity for the purpose of establishing the applicability of the attorney-client privilege; in other words, that GTA is Tack's alter ego. This argument ignores clearly established North Carolina corporate law. This Court has long acknowledged that "[a] corporation is an entity distinct from the shareholders which own it." *Bd. of Transp. v. Martin*, 296 N.C. 20, 28, 249 S.E.2d 390, 396 (1978) (citing *Troy Lumber Co. v. Hunt*, 251 N.C. 624, 627, 112 S.E.2d 132, 134 (1960)). Even a corporation owned by a "single individual" is a distinct entity from its shareholder. *Id.* at 28–29, 249 S.E.2d at 396 (citing *Huski-Bilt, Inc. v. Trust Co.*, 271 N.C. 662, 669–670, 157 S.E.2d 352, 358 (1967); *Acceptance Corp.*

*v. Spencer*, 268 N.C. 1, 8–9, 149 S.E.2d 570, 575–576 (1966)). This rule ensures that a shareholder who forms a corporation "to secure its advantages" cannot "disregard the existence of the corporate entity" to avoid its disadvantages. *Martin*, 296 N.C. at 29, 249 S.E.2d at 396. We decline to overturn this long-established precedent, which has informed North Carolina corporate law for over half a century. And GTA has not shown that circumstances exist which would require a court to disregard the corporate form. Accordingly, at best, Haspeslagh is Luc Tack's agent as to some of Tack's personal affairs, but Haspeslagh is not GTA's agent. The corporation could have made Haspeslagh its agent, but it did not do so. Regarding the custodian issue, GTA had specifically argued to the trial court that Haspeslagh had no role with respect to GTA. Because Haspeslagh is not GTA's agent, the Business Court did not abuse its discretion by concluding that GTA does not merit the attorney-client privilege for conversations which included Haspeslagh.

GTA's argument for specialized applications of the attorney-client privilege likewise fails because Haspeslagh is not GTA's agent. GTA claims that communications involving Haspeslagh are entitled to protection under the "functional[-]equivalent" test or, in the alternative, the *Kovel* doctrine. *See In re Bieter Co.*, 16 F.3d 929, 939 (8th Cir. 1994) (establishing the functional-equivalent test for federal courts in the Eighth Circuit); *United States v. Kovel*, 296 F.2d 918, 921–22 (2d Cir. 1961) (establishing the *Kovel* doctrine for federal courts in the Second Circuit). Neither of these specialized applications has been recognized under North Carolina

law. *See, e.g., Technetics Grp. Daytona, Inc. v. N2 Biomedical, LLC*, No. 17 CVS 22738, 2018 WL 5892737, *3–5 (N.C. Bus. Ct. Nov. 8, 2018).

Yet, even if these specialized attorney-client privilege applications were recognized under North Carolina law, the Business Court did not abuse its discretion by determining that these specialized applications do not apply in this case. Under the functional-equivalent test, an individual is the functional equivalent of a company's employee when his communications with counsel "fell within the scope of his duties" for the company. *In re Bieter Co.*, 16 F.3d at 940. This specialized application does not apply because Haspeslagh lacks any sort of agency relationship with GTA and thus cannot have "duties" at GTA.

Under the *Kovel* doctrine, communications involving a third party are privileged when the communications are "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *Kovel*, 296 F.2d at 922. GTA does not argue that Haspeslagh's presence was necessary for GTA to communicate with its attorneys; rather, GTA argues that Haspeslagh's presence was highly useful for *Luc Tack* to communicate with GTA's attorneys. This argument, again, improperly assumes that Tack and GTA are the same entity. Therefore, communications involving Haspeslagh are not protected under either specialized application GTA requests.

Because GTA would not merit privilege even if these specialized applications of the attorney-client privilege were recognized under North Carolina law, this Court

need not and does not address whether these specialized applications should be recognized under North Carolina law. Therefore, the Business Court did not abuse its discretion by determining that GTA does not merit a specialized application of the attorney-client privilege under the functional-equivalent test or *Kovel* doctrine.[1]

Next, the Business Court did not abuse its discretion by determining that communications involving Haspeslagh are not protected under the work-product doctrine. The work-product doctrine only protects communications when they are "prepared in anticipation of litigation" by a person acting as a company's "consultant . . . or agent." N.C.G.S. § 1A-1, Rule 26(b)(3) (2019); *see also Willis v. Duke Power Co.*, 291 N.C. 19, 35–36, 229 S.E.2d 191, 201 (1976). Here, Haspeslagh has no role at GTA and has not been retained by GTA to work on this lawsuit. Indeed, Luc and Remy Tack both testified that Haspeslagh did not advise GTA about this lawsuit at all. Communications involving Haspeslagh therefore cannot be said to have been "prepared in anticipation of litigation" by Haspeslagh acting as GTA's consultant or agent. The Business Court did not abuse its discretion by determining that GTA does not merit protection under the work-product doctrine for the communications involving Haspeslagh.

Finally, the Business Court did not abuse its discretion by not conducting an exhaustive in camera review of all communications involving Haspeslagh for which

---

[1] Because we hold that no privilege exists protecting the disputed documents from discovery, we need not address defendants' argument that GTA waived its right to assert such a privilege.

GTA sought protection. GTA cannot assert any argument for exhaustive in camera review because it failed to promptly provide all documents necessary for a full review, and because it welcomed a more limited one. When the appellant fails to raise an argument at the trial court level, the appellant "may not . . . await the outcome of the [trial court's] decision, and, if it is unfavorable, then attack it on the ground of asserted procedural defects not called to the [trial court's] attention." *Nantz v. Emp't Sec. Comm'n*, 28 N.C. App. 626, 630, 222 S.E.2d 474, 477, *aff'd*, 290 N.C. 473, 484, 226 S.E.2d 340, 347 (1976).

Here GTA challenges the Business Court's decision to adopt a limited in camera review procedure instead of an exhaustive in camera review procedure, apparently because the Business Court's ruling that came after that limited review is unfavorable to GTA. Significantly, the Business Court adopted this limited review to accommodate GTA. The court initially proposed an exhaustive in camera review, but GTA indicated that it needed more time for an internal review before it would comply. The Business Court then permitted GTA to submit a "reasonable sampling" of the documents for a limited in camera review as an accommodation to GTA. GTA agreed to this procedure and submitted twelve emails for review. After the limited review, GTA did not ask the Business Court for a more exhaustive review. Because GTA did not promptly comply with the court's request as necessary for an exhaustive review, and because the Business Court's limited review was an accommodation which GTA welcomed, GTA cannot now claim that the Business Court's

accommodation constitutes reversible error.

Even if GTA could properly raise an in camera review argument, the Business Court did not abuse its discretion by conducting a limited in camera review. A trial court acting in its discretion may require an in camera review of documents to assist in ascertaining whether certain materials are entitled to privileged status. *Duke Power Co.*, 291 N.C. at 36, 229 S.E.2d at 201; *see also In re Miller*, 357 N.C. 316, 336–37, 584 S.E.2d 772, 787 (2003). Though this Court has not directly addressed the issue of limited in camera reviews, courts in this state and around the nation have consistently permitted limited in camera reviews as a substitute for exhaustive in camera reviews. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, Nos. 06-30378, 06-30379, 2006 WL 1726675, at \*3 (5th Cir. May 26, 2006); *Wachovia Bank, National Ass'n v. Clean River Corp.*, 178 N.C. App. 528, 531–32, 631 S.E.2d 879, 882 (2006). In *Clean River Corporation*, our own Court of Appeals rejected an argument claiming that the trial court had abused its discretion because the "[a]ppellants could have, but chose not to, produce the documents for *in camera* inspection." 178 N.C. App. at 532, 631 S.E.2d at 882. We find that court's reasoning persuasive here because GTA asserts that the Business Court erred by accommodating GTA with a limited in camera review instead of an exhaustive review, which the Business Court originally intended to conduct. Both limited and exhaustive reviews were thus within the Business Court's discretion.

Furthermore, the fundamental issue presented to the Business Court was

whether communications which included Haspeslagh were privileged. The Business Court properly considered the twelve emails GTA selected for its consideration as well as the other evidence. It determined, as previously discussed, that no privilege exists. Therefore, the court had no need to review additional emails.

In sum, we hold that the Business Court did not abuse its discretion by determining that GTA's conversations in which Haspeslagh participated do not merit protection under the attorney-client privilege or the work-product doctrine. Nor did the Business Court abuse its discretion by conducting a limited in camera review of the contested communications. The decision of the Business Court is affirmed.

AFFIRMED.